**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ANDREA WILKIE | * |
|     Plaintiff, | * |
| v. | *    Civil Action No. BPG-08-1425 |
| ZAHID ASLAM, M.D., et al. | * |
|     Defendants. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

This medical negligence case was referred to the undersigned for all proceedings on October 7, 2008 in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302. (Paper No. 25.) Plaintiff Andrea Wilkie is suing defendants, Zahid Aslam, M.D., ("Dr. Aslam") and Health Care for Women, P.A. (Paper No. 17.) Plaintiff alleges that her daughter, Katelynn Hinckle, was born with Down Syndrome on July 3, 2006 as a result of defendants' negligent failure to inform plaintiff of the risks that her child would be born with genetic defects. (Id. at 5-9.) On October 16, 2009, the undersigned issued an Order denying defendants' Motion for Partial Summary Judgment to Limit Economic Damages (Paper No. 87). This memorandum opinion explains the reasons for denying defendants' motion.

In October 2005, plaintiff presented to Dr. Aslam for a pregnancy test. (Paper No. 17 at 2.) Plaintiff's pregnancy was confirmed and she was sent for prenatal labs and started on prenatal vitamins. (Id. at 2-3.) Dr. Aslam sent plaintiff for triple screen testing on February 7, 2006. (Id. at 3.) On February 10, 2006, the laboratory which administered plaintiff's tests reported that the triple screen test was positive for Down Syndrome, indicating a 1 in 37 (or

extremely elevated) risk that plaintiff's child would be born with Down Syndrome. (Id.) According to plaintiff, Dr. Aslam did not inform her of these results, nor did he recommend that plaintiff seek genetic counseling or amniocentesis. (Id.) Plaintiff alleges that she would have terminated her pregnancy if she had been timely informed of the risk that her child would be born with Down Syndrome. (Id. at 4.) Plaintiff gave birth on July 3, 2006. (Id.) Her daughter, Katelynn Hinckle, has Down Syndrome. (Id.) In June 2008, plaintiff initiated the current action against Dr. Aslam and Health Care for Women, P.A seeking $15 million in damages to cover, *inter alia*, the extraordinary costs of caring for a child with Down Syndrome child for the rest of her child's life. (Id. at 8.)[1]

In their Motion for Partial Summary Judgment, defendants argue that, as a matter of Maryland law, a parent-plaintiff in a wrongful birth action may only recover the costs of raising a disabled child through the age of majority. (Paper No. 49-3 at 6-13.) In addition, defendants contend that any award of damages to plaintiff must be offset by the following: (a) the cost of raising a non-disabled child; (b) the benefit of having a child; and (c) any public assistance plaintiff receives for the care of her daughter. (Paper No. 49-3 at 10-16.)

No Maryland appellate court has directly addressed whether post-majority damages are recoverable in a wrongful birth action involving a child born with a disability. Accordingly, defendants primarily base their argument that post-majority damages are not recoverable in this case on the general tort principle that parents seeking to recover medical expenses from injuries sustained by their children at the hands of tortfeasors can only recover the costs of their child's

---

[1] Steven M. Smith, D.O., and Union Hospital of Cecil County were also listed as defendants in plaintiff's Complaint. (Paper No. 1.) On April 10, 2009, the court approved the parties' Stipulation of Dismissal as to defendants Smith and Union Hospital. (Paper No. 43.)

2

medical expenses up to the age of majority. (Paper No. 49-3 at 9-10 (citing Pepper v. Johns Hopkins Hospital, 111 Md. App. 49, 70, 680 A.2d 532, 542 (Md. Ct. Spec. App. 1996), aff'd 346 Md. 679, 697 A.2d 1358 (1997); Garay v. Overholtzer, 332 Md. 339, 631 A.2d 429 (1993)).) Applying this general principle to this case, defendants argue that since "Katelynn [Hinckle] will assume[] the legal responsibility for [her own] debts and obligations, including those for payment of medical expenses" when she reaches the age of 18, any award of damages to plaintiff will "prove a windfall." (Paper No. 49-3 at 10.) Defendants also rely on Jones v. Malinowski, 299 Md. 257, 473 A.2d 429 (1984), a wrongful birth case involving a healthy child, in which the Court of Appeals stated that a trier of fact is permitted "to consider awarding damages to parents for child rearing costs to the age of the child's majority." Id. at 270, 473 A.2d at 435.

Defendants, however, fail to account for a key distinction between Jones and the present case: Jones considered the award of damages in the context of physician negligence that resulted in the birth of a healthy child while defendants' alleged negligence in this case resulted in the birth of a child with Down Syndrome. More importantly, the Jones court explicitly held that the proper measure of damages in wrongful birth cases is the general measure of damages in all tort cases, that is, any damages that were the "natural, proximate and direct" result of a defendant's negligence. Id. at 268-70, 473 A.2d at 435. Similarly, in Reed v. Campagnolo, 332 Md. 226, 630 A.2d 1145 (1993), the Maryland Court of Appeals noted in dictum that the damages suffered by parents in wrongful birth actions "can be quantified under the general rules relating to tort damages." Id. at 238-39, 630 A.2d at 1151. The Reed court also noted that "those courts that recognize the cause of action [for wrongful birth] . . . permit, at a minimum, damages measured by the extraordinary cost, at least through minority, of supporting the child with severe birth

3

defects as compared to supporting a child who is not so afflicted." Id. at 238-39, 630 A.2d at 1151 (emphasis added).

In addition, defendants' argument that the general principle that parents can only recover the costs of their child's medical expenses up to the age of majority is applicable to this case must fail because it rests on the faulty premise that Katelynn Hinckle will automatically assume legal responsibility for her own debts and obligations when she reaches the age of 18. Under applicable law, plaintiff will have a legal obligation to support Katelynn Hinckle if she is not able to provide for herself at the age of majority.[2] MD. CODE ANN., FAM. LAW § 13-102 (West

---

[2] Plaintiff contends that the court should apply the law of Virginia, where plaintiff and her daughter currently reside, while defendants argue that Maryland law is applicable since all events at issue in the suit occurred in Maryland. (Compare Paper No. 54 at 4 with Paper No. 59 at 2.) Both Virginia and Maryland, however, confer virtually identical legal obligations upon parents to provide for children who are incapacitated from earning a living. VA. CODE ANN. § 20-61 (West 2009) ("[A]ny parent who deserts or willfully neglects or refuses to provide for the support and maintenance of his or her child . . . of whatever age who is crippled or otherwise incapacitated from earning a living . . . shall be guilty of a misdemeanor. . . ."); MD. CODE ANN., FAM. LAW § 13-102 (West 2009) ("If a destitute adult child is in this State and has a parent who has or is able to earn sufficient means, the parent may not neglect or refuse to provide the destitute adult child with food, shelter, care, and clothing. . . . A person who violates [§ 13-102] is guilty of a misdemeanor . . . ."); Smith v. Smith, 227 Md. 355, 360, 176 A.2d 862, 865 (1962) (Maryland Legislature's passage of § 13-102 at the first opportunity after the Court of Appeals ruled in Borchert v. Borchert, 185 Md. 586, 45 A.2d 463 (1946), that no common law obligation existed in Maryland to support incapacitated adult children "is a clear indication of legislative intent to place failure to support an incapacitated child on equal footing with failure to support a minor child.").

The court also rejects defendants' contention that these statutes are not applicable to the present case based on the reasoning in Freeburger v. Bichell, 135 Md. App. 680, 763 A.2d 1226 (Md. Ct. Spec. App. 2000). (Paper No. 59 at 3.) In Freeburger, the Maryland Court of Special Appeals held that §13-102 cannot be used by a parent to "create[] a cause of action against [a] tortfeasor whose wrongdoing caused [an] adult child's disability." 135 Md. App. at 691, 763 A.2d at 1232. Plaintiff, however, is not attempting to create a new cause of action, but is instead arguing that the measure of damages, as currently defined by Maryland law, entitles her to recover the expenses she will incur for the post-majority care of her daughter.

4

2009); VA. CODE ANN. § 20-61 (West 2009). Here, plaintiff has cited expert testimony that Katelynn Hinckle "will forever be incapacitated from 'earning a living.'" (Paper No. 54 at 4-5 (quoting John T. Peters, M.D., Dep. 31-32, June 12, 2009).) This testimony is sufficient to raise a genuine issue of material fact as to whether the "natural, proximate and direct" result of defendant's negligence is that plaintiff will have to provide for Katelynn Hinckle's post-majority care. Accordingly, summary judgment on the issue of post-majority damages must be denied. FED. R. CIV. P. 56(c) (summary judgment appropriate "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law"); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (genuine issue of fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).[3]

This conclusion is consistent with decisions of other courts considering this issue. See, e.g., Phillips v. United States, 575 F. Supp. 1309, 1316-17 (D.S.C. 1983) (awarding damages for post-majority extraordinary expenses under South Carolina law); Viccaro v. Milunsky, 406 Mass. 777, 781-82, 551 N.E.2d 8, 11 (1990) ("If [plaintiffs] prove that, when [their child] attains

---

[3] Defendants also argue that, because Katelynn will assume responsibility for her needs once she reaches the age of majority, awarding plaintiff damages for the costs associated with Katelynn's post-majority care would constitute an award of damages for Katelynn's existence. (Paper No. 49-3 at 7-8.) Such an award, according to defendants, is tantamount to an award of damages for a "wrongful life" claim, which is prohibited in Maryland. (Id. (citing Kassama v. Magat, 368 Md. 113, 148-49, 792 A.2d 1102, 1123-24 (2002) (holding "wrongful life" claims not cognizable under Maryland law because such claims necessarily require courts to find that being born with disability is worse than not being born at all)).) Awarding damages to plaintiff for the costs she will bear for the post-majority care of her disabled child throughout her child's life, however, is not the same as compensating her child for her "wrongful life." See Garrison v. Medical Center of Delaware, Inc., 581 A.2d 292 (Del. 1990) (refusing to recognize cause of action for wrongful life, but permitting parent to recover post-majority medical expenses in corresponding wrongful birth action).

his majority, they will remain liable for [their child's] support, they will be entitled to recover for the extraordinary expenses they will incur during [their child's] majority."); Garrison v. Medical Center of Delaware, Inc., 581 A.2d 288, 292 (Del. 1989) (consistent with the duty under Delaware law that "parents have a continuing obligation to provide for their children who cannot care for themselves[,] . . . parents may recover damages measured by the life of the child or the child's life expectancy to the extent [their child] remains dependent upon either or both of her parents"); Lininger v. Eisenbaum, 764 P.2d 1202, 1207 n.8 (Colo. 1988) ("Because [plaintiffs] have been damaged to the extent that they are legally responsible for [their child's] medical and education expenses, the defendants' liability should, in principle, extend to [the child's] majority, or older, if [the child] remains a legal dependent of the [plaintiffs]"); James G. v. Caserta, 175 W. Va. 406, 416, 332 S.E.2d 872, 882 (1985) ("[P]arents will not be made whole by permitting a recovery for [extraordinary medical expenses] only for the minority of the child, when it can be shown that the child will not be self-sufficient once the age of majority is reached.").[4]

In addition, defendants contend that any award of damages to plaintiff must be subject to a number of offsets. (Paper No. 49-3 at 10-16.) First, defendants assert that since plaintiff planned to give birth to a child and, therefore, planned to incur the usual costs of raising a child, "[l]ogic dictates" that the only damage that could have resulted directly and naturally from defendants' alleged negligence is the cost difference between raising a child with Down Syndrome and raising a non-disabled child. (Paper No. 49-3 at 13-14.) Second, defendants

---

[4] Although other courts have held that parents cannot recover post-majority expenses in wrongful birth cases involving a child born with a disability, at least some of these decisions were based on the fact that the laws of their jurisdictions do not require parents to support adult children who are incapacitated from earning a living. See, e.g., Bani-Esraili v. Lerman, 69 N.Y.2d 807, 505 N.E.2d 947 (1987).

6

argue that, according to Jones v. Malinowski, an award of damages to a parent in a wrongful birth case must be offset by the benefits derived by the parents from the child's "'aid, society and comfort.'" (Id. (quoting 299 Md. at 270, 473 A.2d at 435).)

Plaintiff, however, is only seeking to recover the "extraordinary medical expenses" associated with caring for a child with Down Syndrome. (Paper No. 17 at 8 and Paper No. 71 at 2-3.) Thus, plaintiff's alleged damages necessarily exclude the costs of raising a non-disabled child. Further, although plaintiff will undoubtedly derive pleasure from Katelynn, such pleasure bears no relation to the extraordinary financial medical expenses that plaintiff alleges she has incurred, and will continue to incur. See, e.g., Lininger v. Eisenbaum, 764 P.2d 1202, 1207 (Colo. 1988) ("[T]he extraordinary financial burden [plaintiffs] claim to have suffered, and will continue to suffer, is sufficiently unrelated to the pleasure they will derive from raising [their child] as to preclude operation of the benefit rule . . . ."); Schroeder v. Perkel, 87 N.J. 53, 69-70, 432 A.2d 834, 842 (N.J. 1981) ("By limiting damages to those expenses that are actually attributable to the affliction, we are not conferring a windfall on [plaintiffs]. . . .[Plaintiffs] will receive no compensating pleasure from incurring extraordinary medical expenses on behalf of [their child].").

Finally, defendants assert that, as a matter of law, any damages plaintiff receives must be offset by any public assistance plaintiff receives for the care of her daughter. (Paper No. 49-3 at 14-15.) Defendants, however, cite no case law in support of this proposition. (Id.) Further, such a holding would contradict Maryland's collateral source rule. See Motor Vehicle Admin. v. Seidel Chevrolet, Inc., 326 Md. 237, 253, 604 A.2d 473, 481 (1992) (Maryland's collateral source rule "permit[s] an injured person to recover in tort the full amount of his provable

damages regardless of the amount of compensation which the person has received for his injuries from sources unrelated to the tortfeasor.").[5]

Accordingly, as noted in this court's Order of October 16, 2009, defendants' Motion for Partial Summary Judgment to Limit Economic Damages (Paper No. 49) is DENIED.

Date:   10-21-09                                                                /s/
                                                                      Beth P. Gesner
                                                                      United States Magistrate Judge

---

[5] In their Motion for Partial Summary Judgment, defendants observe that plaintiff's First Amended Complaint alleges several types of damages suffered by Katelynn Hinckle. (Paper No. 49-3 at 15-16.) Defendants suggests that these allegations "may be a residue of the original complaint related to the wrongful life claim which has been abandoned" and requests that they be stricken. (Id.) Plaintiff did not address this argument in her opposition motion. In light of the parties' Joint Pretrial Order in which plaintiff described damages sought by plaintiff as the "extraordinary costs of raising a child with Down syndrome" (Paper No. 71 at 2-3), it appears that plaintiff has abandoned the "other damages" mentioned in her First Amended Complaint, thereby rendering that portion of defendants' motion moot. If that conclusion is in error, plaintiff should so advise the court.

8